THE SUPREME LODGE KNIGHTS OF PYTHIAS

*v.*

HENRY J. KUTSCHER, Admr.

*Opinion filed April 17, 1899.*

1. BENEFIT SOCIETIES—*supreme lodge cannot delegate power to legislate to board of control.* A supreme lodge of a benefit society cannot delegate to the board of control of the endowment rank the power to pass a by-law forfeiting the certificate of membership, and all claims thereunder, of any member whose death shall result from self-destruction, voluntary or involuntary, whether sane or insane.

2. SAME—*certificate of membership construed more strictly against the society than the member.* A certificate of membership in a benefit

society which binds the member to a "full compliance with all laws governing this rank now in force or that may be hereafter enacted by the supreme lodge * * * or the board of control of the endowment rank," will be construed as meaning such laws as that board might lawfully enact or the supreme lodge enact or adopt.

3. SAME—*supreme lodge may validate unauthorized by-law.* Adoption by supreme lodge of an unauthorized by-law passed by a subordinate board of control renders such by-law effective, and binds members who have agreed to comply with by-laws "now in force or hereafter enacted by the supreme lodge."

4. SAME—*constitution need not be followed in adopting by-laws.* The "constitution" of a benefit society has the force of a by-law only, and cannot take away the inherent power to adopt such other by-laws as the charter permits.

5. SAME—*reasonableness of by-law.* A by-law forfeiting claims for the death of a member of a benefit society by suicide or intoxication is reasonable, and binds a member joining before its passage whose contract requires compliance with by-laws "now in force or hereafter enacted."

*Supreme Lodge K. of P.* v. *Kutscher,* 72 Ill. App. 462, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

H. H. FIELD, and GREENE & HUMPHREY, for appellant.

CONNOLLY, MATHER & SNIGG, for appellee.

Per CURIAM: The Appellate Court has affirmed a judgment of the Sangamon circuit court in favor of appellee, against appellant, on a certificate of membership issued by appellant to William C. Henry, payable to Louisa M. Henry, his wife. While in a drunken frenzy Henry killed his wife and then himself, and the suit was brought by the administrator of her estate.

The applications of Henry for the certificate contained this clause: "I hereby agree that I will punctually pay all dues and assessments for which I may become liable, and that I will be governed and this contract shall be controlled by all the laws, rules and regulations of the

order governing this rank now in force or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World, or submit to the penalties therein contained, to all of which I willingly and freely subscribe." They were made, respectively, June 4, 1889, and April 26, 1892. The certificate was issued to him July 19, 1892, and it certified that Henry received the obligation of the endowment rank of the order and was a member in good standing in said rank, and contained the following provisions: "And in consideration of the representations and declarations made in his applications, * * * which applications are made a part of this contract, and the payment of the prescribed admission fee, and in consideration of the payment hereafter to said endowment rank of all assessments as required, and the full compliance with all the laws governing this rank now in force or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World, or the board of control of the endowment rank, and shall be in good standing under said laws, the sum of $3000 will be paid by the board of control of the endowment rank Knights of Pythias of the World to Louisa M. Henry, his wife, as directed by said brother in his application, or to such other person. * * * And it is understood and agreed that any violation of the within mentioned conditions or the requirements of the laws in force governing this rank shall render this certificate and all claims null and void, and that the said endowment rank shall not be liable for the above sum or any part thereof."

The by-laws of the order, called its "Constitution," empowered the board of control to establish sections of the endowment rank, and to enact, alter and amend, from time to time, all laws and regulations necessary to govern the same. Acting under this authority, the board of control on January 13, 1893, passed the following alleged law for the government of the members of the endowment rank: "If the death of any member of the endow-

ment rank heretofore admitted into the first, second, third or fourth classes, or hereafter admitted, shall result from self-destruction, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics or opiates, or in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law, then in such case the certificate issued to such member, and all claims against said endowment rank on account of such membership, shall be forfeited." The board of control reported its action in passing this law, with a copy thereof, to the supreme lodge at its regular session held in August and September, in 1894, where said report was by the action of that body referred to one of its committees, which committee reported to the supreme lodge in session approving the action of the board of control in adopting said law and recommending the adoption of the report. After the report had been printed it was adopted by the supreme lodge September 7, 1894. This by-law was published as one of the laws of the order.

These facts appear from the evidence adduced by the defendant under the issues. The trial court excluded the evidence of the defendant and instructed the jury to find for the plaintiff and to assess the damages at the amount specified in the certificate.

We regard the question as settled that the supreme lodge could not delegate to a subordinate body the power to enact laws of this character, and that said board of control had no power to enact said law. (*Supreme Lodge* v. *McLennan*, 171 Ill. 417; *Supreme Lodge* v. *LaMalta*, 31 S. W. Rep. 493.) There are, then, but two questions to be considered: First, was said alleged law binding upon Henry and his beneficiaries by virtue of his contract to comply with all the laws governing the endowment rank which were in force when he became a member or which might thereafter be enacted by the supreme lodge or the board

of control; and second, if he was not bound by a law of the board of control which it had no power to enact, was the action of the supreme lodge adopting the report of its committee approving the action of the board of control and recommending the adoption of its report a sufficient adoption itself of said law, so as to make it a law, legally enacted, of said order.

After a further consideration of the case upon rehearing we have reached the conclusion that, as a law of this character could be enacted only by the supreme lodge, it would be a strained construction of the contract to hold that the parties to it, by the terms employed, intended that the members of the order should be bound by it though enacted by a subordinate body having no lawful authority to do so.   The board of control had power, by the laws of the order, to pass certain laws and regulations for the government of members of the endowment rank to which Henry belonged, but not of the character of the law in question, and the terms of the contract should not be construed to extend farther than to such laws and regulations, and to embrace others of a general character which the board of control could not lawfully enact.   It is no answer to say that appellee is bound by Henry's contract with appellant, and that Henry had the right and power to stipulate that the certificate should be forfeited in case he violated any law which the board of control might thereafter enact, whether it had power to enact it or not.   The question here is, not the power of Henry to make such a contract, but what is the meaning of the contract which he did make.   It will be noticed that there is a difference between the terms of the applications and those of the certificate in the respect mentioned.   The certificate makes the applications a part of the contract, but also binds Henry to a "full compliance with all laws governing this rank now in force or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World, *or the board of control of*

*the endowment rank.*"  This is the language of appellant
in its certificate, and should be construed more strictly
against it than against the insured.   To confine it to laws
which the board of control had power and could lawfully
enact will give it all the force it is reasonably entitled
to.    To extend it further would be to construe it more
strictly against the insured and his beneficiary.   The by-
law is a reasonable and wholesome one, and if properly
enacted should be enforced.

It is contended that the action of the supreme lodge
in adopting said report did not, under the constitution of
said supreme lodge, have the effect of adopting or pass-
ing said by-law by the supreme lodge itself.   This conten-
tion is based on provisions of such constitution, the most
pertinent of which are as follows:

"Sec. 15. No proposition shall become a statute until
it shall have passed three successive readings, the sec-
ond and third of which shall not be had on the same
calendar day.

"Sec. 16. The affirmative vote, by yeas and nays, of a
majority of all the members of the supreme lodge shall
be required for the final passage of a proposition.

"Sec. 18. The enacting clause of every proposition
shall be as follows:   *Be it enacted by the Supreme Lodge
Knights of Pythias*, and shall precede or be a part of the
first section or such proposition."

By-laws of the general character of the one in ques-
tion were by the constitution designated "statutes," and
when merely proposed for enactment, "propositions."   It
is apparent that the supreme lodge did not observe these
provisions of its constitution in adopting this by-law, if
it did adopt it; but the appellant contends that the by-
law was lawfully adopted although not in the manner
provided in the constitution.    In this view we concur.
The constitution was no part of the charter of the corpo-
ration, and was but a by-law under another name, and
could not take from the lawfully constituted authorities

of the corporation the power inherent in it as a corporate body to adopt, from time to time, such other by-laws as its charter permitted and its necessities required. The same body that enacted the by-laws called the "constitution" had the power to alter, amend or repeal them, and to do so in any lawful manner. The majority of the corporate authorities cannot at one meeting pass a by-law taking away from their successors, acting within the charter and by a majority, the power to repeal or amend the by-laws of the corporation or to enact new ones. They may make rules and by-laws regulating their own proceedings and for their convenience, but a by-law otherwise lawfully adopted, of a general character like the one in question, is not rendered invalid because in adopting it the corporate authorities violated certain rules of procedure which they had previously prescribed. This precise question, involving the same by-law in controversy here, was fully considered by the Supreme Court of Mississippi in *Dornes* v. *Supreme Lodge Knights of Pythias of the World*, 75 Miss. 466, and the same conclusion reached. See, also, *Supreme Lodge* v. *Knight*, 117 Ind. 495; *Commonwealth* v. *Mayor*, 5 Watts, 152; Angell & Ames on Corp. 459; *Christ Church* v. *Pope*, 8 Gray, 140; *Sayre* v. *Louisville, etc.* 85 Am. Dec. 618, note; 5 Am. & Eng. Ency. of Law, (2d ed.) 88; 1 Thompson on Corp. sec. 943.

William C. Henry, the insured, committed suicide on October 3, 1895,—more than a year after this by-law was adopted by the supreme lodge. By force of his contract he and his beneficiaries were bound by it, although it was adopted after he became a member and received his certificate. The trial court erred in instructing the jury to return a verdict for the plaintiff.

The judgments of the circuit and Appellate Courts are both reversed, and the cause will be remanded to the circuit court for further proceedings not inconsistent with the views herein expressed.    *Reversed and remanded.*